UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
:
DARRYL HENDERSON,                              :
:
Petitioner,            :
:
- against -                    :
:
UNITED STATES OF AMERICA                       :
:
Respondent.            :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/12

OPINION AND ORDER

10 Civ. 7806 (SAS)

02 CR 451 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.   INTRODUCTION

On October 7, 2010, Darryl Henderson ("Henderson" or "Petitioner") filed this pro se motion to vacate, set aside or correct his sentence pursuant to section 2255 of Title 28 of the United States Code ("section 2255"). In the alternative, Henderson requests that an evidentiary hearing be held to determine the facts and develop the record regarding his section 2255 motion.[1] Henderson challenges his sentence on the ground that he was denied effective assistance of counsel. In particular, Henderson asserts that his counsel was ineffective because they: (1) failed to object to Judge Richard Owen's alleged witness vouching and other "constant/damaging interruptions during Petitioner's criminal trial;" (2)

---

[1] *See* Memorandum in Support of Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Pet. Mem.") at 21.

1

failed to object to the Government's reference to Henderson as "a drug dealer, a gang member, and a murderer" during opening statements; (3) failed to object to the Government's examination of cooperating witnesses about the truth-telling requirements of their cooperation agreements; and (4) failed to move for a mistrial when Judge Owen excluded testimony by Henderson's bloodstain pattern expert. For the reasons discussed below, Henderson's motion is denied.[2]

## II.   BACKGROUND

### A.   The Offense Conduct

On July 19, 2006, Superseding Indictment S9 02 CR 451 ("the Indictment") was filed against Henderson and Charod Becton. The charges related to their alleged participation in the narcotics trafficking organization and racketeering enterprise known as "Murder Unit," and their alleged involvement in a triple-homicide and robbery inside a Bronx apartment on January 21, 2002. The Indictment, containing sixteen counts, charged Henderson with the following: (1) racketeering, in violation of section 1962(c) of Title 18 of the United States Code

---

[2]   Furthermore, petitioner's section 2255 motion appears to be time-barred. The Mandate affirming the judgment of this Court was issued on March 16, 2009. Adding the ninety days in which petitioner could have sought a writ of certiorari from the Supreme Court brings us to July 15, 2009. One year from June 15, 2009 is June 15, 2010, the deadline for filing Petitioner's 2255 motion. Petitioner did not file his motion until October 4, 2010, approximately three and a half months after the one-year deadline.

(Count One), based on the predicate acts of: (i) robbery conspiracy, robbery, and felony murder in connection the with the January 2002 triple-homicide; (ii) attempted arson of the apartment where the January 2002 robbery and murders occurred; (iii) possession with intent to distribute the cocaine stolen during the January 2002 robbery-homicides; (iv) conspiracy to distribute "crack" cocaine from 1995 through June 2002; (v) conspiracy to distribute marijuana (against Becton); and (vi) extortion (against Becton); (2) racketeering conspiracy, in violation of section 1962(d) of Title 18 of the United States Code (Count Two); (3) conspiracy to distribute five or more kilograms of cocaine stolen during the January 2002 triple-homicide, in violation of section 841(b)(1)(A) and 846 of Title 21 of the United States Code (Count Three); (4) the murders of Louise Butler, Crosby Rico and Moises Perez, on January 21, 2002, while engaged in a major cocaine conspiracy, in violation of section 848(e)(1)(A) of Title 21 of the United States Code (Counts Four through Six); (5) conspiracy to commit Hobbs Act robbery and Hobbs Act robbery in connection with the cocaine robbery on January 21, 2002, in violation of section 1951 of Title 18 of the United States Code (Counts Seven and Eight); (6) using, carrying and possessing firearms during and in relation to the January 2002 robbery-homicides in violation of section 924(c) of Title 18 of the United States Code (Count Nine); (7) attempted arson of the

apartment in which the triple-homicide occurred, in violation of section 844(i) of Title 18 of the United States Code (Count Ten); (8) conspiracy to distribute fifty grams or more of crack cocaine from 1995 through June 2002, in violation of sections 841(b)(1)(A) and 846 of Title 21 of the United States Code (Count Eleven); and (9) distribution of and possession with intent to distribute crack cocaine on May 22, 1999, in violation of section 841(b)(1)(C) of Title 21 of the United States Code (Count Sixteen).[3]

On January 22, 2007, a jury convicted Henderson of seven of the twelve counts charged against him including Counts One, Two, Three, Seven, Eight, Eleven and Sixteen.[4] On April 23, 2007, Judge Owen sentenced Henderson to life imprisonment on Counts One, Two, Three and Eleven; twenty years on Counts Seven and Eight; and thirty years on Count Sixteen, all to run concurrently.[5]

---

[3] Counts Twelve through Fifteen charged Becton alone with marijuana conspiracy, use and possession of firearms in connection with the marijuana conspiracy, extortion, and distribution of crack cocaine.

[4] *See* Government's Response to Motion to Vacate, Set Aside or Correct a Sentence ("Gov't Mem.") at 66-67. The jury acquitted Henderson of Counts Four, Five, Six, Nine and Ten. *See id.* at 61.

[5] *See id.* at 68.

### B. Procedural History

Henderson appealed his conviction on several grounds arguing that: (1) statements he made at the police precinct should have been suppressed; (2) the evidence was insufficient as to the RICO convictions; (3) the district court erred by admitting evidence relating to Henderson's involvement in a 1996 incident in which shots were fired from a van and a 1988 conviction for distributing heroin near a school; (4) the district court erred by excluding the testimony of an expert witness for the defense; and (5) his sentence failed to account for his acquittal on the intentional murder charges.[6] The Second Circuit rejected each of Henderson's arguments and, on December 17, 2008, affirmed Henderson's conviction by Summary Order.[7] Thereafter, Henderson filed the instant section 2255 motion, claiming that he received ineffective assistance of trial counsel.

## III. APPLICABLE LAW

### A. Section 2255

Section 2255 permits a convicted person held in federal custody to petition the sentencing court to vacate, set aside, or correct a sentence. A properly filed motion under section 2255 must allege that: (1) the sentence was imposed in

---

[6]  *See United States v. Henderson*, 303 Fed. App'x 30 (2d Cir. 2008).

[7]  *See id.*  The Second Circuit's Mandate was issued on March 16, 2009.

violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.[8]  Accordingly, collateral relief under section 2255 is permitted "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[9]

### B. Ineffective Assistance of Counsel

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[10]

When analyzing a claim that counsel's performance did not meet constitutional standards, "judicial scrutiny of counsel's performance must be

---

[8]  *See* 28 U.S.C. § 2255.

[9]  *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[10]  *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984).

highly deferential."[11]  The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[12]  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[13]  Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[14]  Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled."[15]  Finally, even if an attorney's performance was objectively unreasonable and unprofessional, a petitioner must still prove prejudice.[16]  There is, however, a presumption of prejudice when "counsel *entirely* fails to subject the prosecution's case to

---

[11]     *Id.* at 689.

[12]     *Id.*

[13]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

[14]     *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

[15]     *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted).

[16]     *See Stickland*, 466 U.S. at 687.

meaningful adversarial testing."[17]  For this exception to apply, the attorney's failure "must be complete."[18]

### C. Truth-Telling Provisions

"Because truth-telling provisions are used by the government primarily to bolster the credibility of a witness, the admission of testimony concerning such provisions before the credibility of a witnesses has been challenged runs afoul of the well established rules of evidence that absent an attack on the veracity of a witness, no evidence to bolster his credibility is admissible."[19] However, "[i]f the [defendant's] opening [statement] sufficiently implicates the credibility of a government witness, [the Second Circuit has] held that testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination."[20]  The Second Circuit has gone "on to hold that the entire agreement, as well as testimonial evidence of its bolstering aspects, could be admitted on the government witness' direct testimony when the witness' credibility has been attacked in the defense's opening

---

[17]  *United States v. Cronic*, 466 U.S. 648, 659 (1984) (emphasis added).

[18]  *Bell v. Cone*, 535 U.S. 685, 697 (2002).

[19]  *United States v. Gaind*, 31 F.3d 73, 78 (2d Cir. 1994) (quotation marks and citations omitted).

[20]  *Id.* (citations omitted).

statement."[21]

### D. Mandate Rule

> [T]he so-called mandate rule bars litigation of issues already decided on direct appeal. The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate . . . . In the context of Section 2255 proceedings involving claims of ineffective assistance of counsel, [the Second Circuit has] applied the mandate rule to bar claims raised and resolved on direct appeal. [The Second Circuit has] also applied the mandate rule to bar ineffective assistance claims in a Section 2255 proceeding when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate.[22]

## IV. DISCUSSION

### A. Alleged Interruptions and Witness Vouching by Trial Judge

Henderson first argues that he was unconstitutionally denied effective assistance of counsel because his defense counsel failed to object to Judge Owen's alleged witness vouching and other "constant/damaging interruptions during Petitioner's criminal trial."[23] Henderson contends that the court "repeatedly and consistently was discontent to allow defense counsel to question witnesses" and

---

[21] *Id.* (citations omitted).

[22] *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citations omitted).

[23] Pet. Mem. at 5.

"dominated questioning of the witnesses so as to preempt defense counsel's function . . . ."[24]

In support of this argument, Henderson points to a single exchange, which occurred outside the presence of the jury, between Judge Owen and defense counsel. One of the Government's cooperating witnesses, Naatifah Costello, had previously provided a partly false written statement to the police. When defense counsel cross-examined Costello, they read parts of the statement aloud and asked Costello whether each sentence was true or false. After the jury left for lunch, Judge Owen expressed concern that defense counsel was spending too much time on those parts of the statement that Costello was maintaining were true and which would not aid Henderson's case. Defense counsel then assured Judge Owen that the defense would spend "at most, five more minutes on this statement."[25] Henderson now points to this exchange to argue that "the court effectively expressed its opinion that the witness had told the truth."[26] Henderson mischaracterizes several aspects of the exchange. Judge Owen did not express any opinion about the veracity of Costello's testimony. Furthermore, this exchange occurred outside the presence of the jury and, therefore, could not have prejudiced

---

[24]   *See id.* at 5-6 (quotations marks and citations omitted).

[25]   *See* Gov't Mem. at 78 (quoting Trial Transcript ("Tr.") at 3855).

[26]   Pet. Mem. at 8 (citing Tr. at 3855).

10

Henderson's defense. For these reasons, Henderson's first argument fails.

## B. Government's Remarks During Opening Statements

Henderson next argues that his defense counsel was ineffective for failing to object to remarks made by the prosecutor during his opening statements.[27] The prosecutor stated:

> Ladies and gentlemen, one of the men responsible for these terrible crimes, in fact the one who was involved in the relationship with the young women who was killed in the apartment, that man is sitting right before you in this courtroom. He is Darryl Henderson, the defendant, and he is a drug dealer, a gang member, and a murderer. [28]

Henderson asserts that these remarks were "unfairly prejudicial and were proffered for the sole purpose to poison the minds of the jury."[29] The Government contends that the prosecutor's remarks were appropriate; and, in any event, Henderson is unable to demonstrate any prejudice arising from defense counsel's failure to seek a curative instruction.[30]

In evaluating the prosecutor's remarks during his opening statement, a court must look at "'the entire argument before the jury'" and determine whether

---

[27] *See id.* at 10.

[28] *Id.* (quoting Tr. at 2757).

[29] *Id.* at 11.

[30] *See* Gov't Mem. at 86.

11

the remarks "deprived the defendant of a fair trial."[31]  Here, in light of the extensive evidence presented at trial with regard to Henderson's alleged drug deals, gang involvement, and participation in murder, it cannot be said that the prosecutor's remarks mischaracterized the evidence.[32]  Furthermore, Henderson has not demonstrated that the remarks prejudiced his defense.  Henderson has not shown that the outcome of the trial would have been any more favorable had his counsel objected to the statements.  For these reasons, Henderson's second argument fails.[33]

### C. Testimony of Cooperating Witnesses Concerning Their Cooperation Agreements

Henderson next argues that defense counsel was ineffective due to their failure to object when the prosecution elicited testimony on direct

---

[31]  *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir. 1985) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 242 (1940)). *Cf. United States v. Myerson*, 18 F.3d 153, 163 (2d Cir. 1994) (stating that the inquiry regarding the Government's allegedly improper summation is "whether a prosecutor's statements, taken in the context of the entire argument before the jury, prejudiced the defendant and deprived him of a fair trial") (citations omitted).

[32]  *See Myerson*, 18 F.3d at 163 ("It is well settled that the prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence.") (quotation marks and citations omitted).

[33]  It should also be noted that Judge Owen twice instructed the jury that the Government's opening statement did not constitute evidence. *See* Gov't Mem. at 88 (citing Tr. at 2749, 2753).

examination about the truth-telling portions of two Government witnesses' cooperation agreements.[34] The Government argues that no objection was necessary because "defense counsel specifically put the credibility of the cooperating witnesses at issue during opening statements, thereby opening the door for the Government to elicit testimony about the truth-telling provisions of their cooperation agreements."[35] The Government also contends that Judge Owen gave an instruction limiting the jury's consideration of the cooperating witnesses' guilty pleas and that Henderson cannot demonstrate any prejudice.[36]

It is true that the Government introduced the witnesses' truth-telling provisions on direct examination. However, testimony concerning the truth-telling provisions is admissible on direct examination if the defendant's opening statement "sufficiently implicates the credibility of a government witness."[37] That is what occurred in this case. Defense counsel's opening statements questioned the credibility of the Government's witnesses, thereby opening the door for testimony

---

[34] *See* Pet. Mem. at 12.

[35] Gov't Mem. at 89.

[36] *See id.* at 89-90.

[37] *Gaind*, 31 F.3d at 78.

about the truth-telling provisions on direct examination.[38] For this reason, Henderson's third argument fails.

### D. Exclusion of Defense Expert Witness Testimony

Finally, Henderson argues that defense counsel was ineffective for failing to move for a mistrial based on Judge Owen's exclusion of the testimony of a defense expert witness.[39] Amin Wilson was a cooperating witness for the Government who testified that Henderson, along with two other co-defendants, had returned from the crime scene covered with blood stains.[40] In response to Wilson's testimony, defense counsel sought to introduce the testimony of its own bloodstain pattern expert, Ross Gardner.[41] Judge Owen excluded Gardner's testimony under Federal Rule of Evidence 702.[42] On appeal, the Second Circuit stated that it was

---

[38] *See* Gov't Mem. at 90 (quoting opening statements of defense counsel) (Tr. at 2773-74) ("[The Government's witnesses] are people who were initially charged in this case and who have made a deal in the hopes of getting a lighter sentence. And they are people who have absolutely nothing to lose and everything in the world to gain by falsely pointing the finger at Darryl Henderson.").

[39] *See* Pet. Mem. at 16.

[40] *See id.* at 18. *Accord* Gov't Mem. at 97.

[41] *See* Gov't Mem. at 102.

[42] Rule 702 allows admission of expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

"confident that the district court did not abuse its discretion in excluding the testimony of Henderson's expert" and affirmed Judge Owen's decision to exclude the testimony.[43] The Second Circuit went on to hold that "[i]t was reasonable for Judge Owen to conclude that introducing expert testimony to impeach Wilson's description of the perpetrators as being 'covered' in blood would not have assisted the jury."[44] Accordingly, because the Second Circuit has already considered and rejected Henderson's argument that Gardner's testimony was erroneously excluded, Henderson's ineffective assistance of counsel claim based on such exclusion must fail.[45]

## V. CONCLUSION

For the foregoing reasons, Henderson's section 2255 motion is denied. The remaining issue is whether to grant a Certificate of Appealability ("COA"). For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[46] A "substantial showing" does not require a

---

[43] *Henderson*, 303 Fed. App'x at 37.

[44] *Id.*

[45] *See Yick Man Mui*, 614 F.3d at 53. Henderson also contends that defense counsel was ineffective for failing to move for a mistrial. *See* Pet. Mem. at 16. However, defense counsel did move for a mistrial – and Judge Owen denied the motion – at the close of the Government's summations. *See* Gov't Mem. at 102 (citing Tr. at 4993-95).

[46] 28 U.S.C. § 2253(c)(2).

15

petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[47] Petitioner has made no such showing. Accordingly, I decline to grant a certificate of appealability. This Court certifies, pursuant to 28 U.S.C. section 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for purposes of appeal.[48] The Clerk of the Court is directed to close the instant motion [docket # 1] and this case.

SO ORDERED:

*[signature]*

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
March 1, 2012

---

[47] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal quotation marks and citations omitted)). *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

[48] *See Coppedge v. United States*, 369 US. 438, 444-45 (1962).

## -Appearances-

**Petitioner (Pro Se):**

Darryl Henderson
# 14677-054
U.S. Penitentiary Tucson
P.O. Box 24550
Tucson, AZ 85734

**For Respondent:**

Michael D. Maimin
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2238